UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JEAN GAGNON<br><br>　　　　Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, ex rel., its DEPARTMENT OF PUBLIC SAFETY, HIGHWAY PATROL, BRIAN SANCHEZ, CHRIS PERRY, JACKIE MUTH, JAMES WRIGHT, JOHN and JANE DOES 1-10; ROE BUSINESS ENTITIES and CORPORATIONS 1-10; BLACK and WHITE COMPANIES 1-10, et al.,<br><br>　　　　Defendants. | 2:13-cv-00528-JAD-PAL<br><br>Order Granting Defendants' Motion for Judgment on the Pleadings, Denying Plaintiff's Motion for Leave to Amend, Entering Judgment, and Dismissing Case<br><br>[Docs. 75, 94] |

　　　　This case springs from the power struggle for control over the Nevada Highway Patrol's K9 program in the late 2000s. I dismissed Jean Gagnon's original complaint with leave to amend his First Amendment-retaliation claim and his state-law civil-conspiracy claim. But Gagnon's amended complaint contains a retaliation claim, a civil conspiracy claim under federal law, and a new due-process/Peace Officer Bill of Rights claim. Defendants move for judgment on the federal civil-conspiracy and due-process claims because Gagnon did not have leave to plead them. They move for judgment on his retaliation claim because it is time-barred and because the facts of this case do not support this constitutional cause of action. Gagnon opposes the motion and asks for leave to amend his claim to add yet more facts to support his retaliation claim.

　　　　I find that Gagnon's amended complaint still fails to state a plausible First Amendment-retaliation claim because, despite my clear instructions when granting leave last time, he still has not identified a single protected communication that prompted the alleged retaliation. I dismiss Gagnon's federal civil conspiracy and due-process/Peace Officer Bill of Rights claims because they were filed without leave to amend. Finally, I deny Gagnon's belated request for leave. Even with his proposed additions to his First Amendment claim, he still fails to state a plausible claim. He also has not shown good cause to add these unauthorized claims nor demonstrated excusable neglect for

requesting leave months after the court-ordered deadline.

## Background

The following facts are taken from Gagnon's amended complaint and must be taken as true.[1]

**A.    The Battle for Control of the Nevada Department of Public Safety's K9 Program**

In 2007, Jerald Hafen, then-Director of the Nevada Department of Public Safety, appointed Defendant Chris Perry, the Chief of Nevada Highway Patrol (NHP), to develop an implementation plan for a K9 drug program.[2] Unsatisfied with the results, Hafen reassigned the task to Gagnon.[3] Angered and embarrassed, Perry vowed to destroy the K9 program and any other new programs implemented by Hafen.[4]

Over the course of the next three years, Perry and his confidantes sabotaged the Gagnon-developed K9 program. They ordered Gagnon not to work overtime, repeatedly interrupted the training program, failed to timely process purchase requests and K9 employee time sheets, deleted employment and training records, ordered Gagnon to attend a three-month command school out of state, and insisted that Gagnon be transferred to a different department.[5] Despite defendants' efforts, the K9 program was a success and resulted in the interception of large quantities of illegal drugs and drug money.[6] This only further angered defendants and strengthened their resolve to sabotage Gagnon and his program.[7]

On January 1, 2011, Hafen retired.[8] Perry assumed Hafen's position and promptly began to

---

[1] *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); Fed. R. Civ. P. 12(c).

[2] Doc. 45 ¶ 16.

[3] *Id.* at ¶ 18.

[4] *Id.* at ¶ 19.

[5] *Id.* at ¶¶ 30, 33, 41, 42, 52, 59.

[6] *Id.* at ¶¶ 44–48.

[7] *Id.* at ¶ 49.

[8] *Id.* at ¶ 65.

dismantle the K9 program.[9] In late March 2011, Perry notified Gagnon that he had personally launched an internal investigation against him.[10] Gagnon retired on March 28, 2011.[11]

### B. This litigation and the first round of dismissals

Gagnon filed this lawsuit on March, 27, 2013, against the State of Nevada (and its divisions, the NHP and DPS), the Las Vegas Metropolitan Police Department (Metro), and NHP Officers Perry and Sanchez.[12] Gagnon asserted claims for First Amendment retaliation, "citizens[']" Fourth Amendment violations by NHP, civil-conspiracy claims under both state law and 42 U.S.C. § 1985, a claim for slander or defamation, a § 1983 claim for failure to train, and claims for trespass, fraud, unjust enrichment, and RICO violations.[13]

Defendants[14] promptly responded with a motion for judgment on the pleadings. In response, Gagnon abandoned—and conceded—the dismissal of the Fourth Amendment violation claim, the federal conspiracy claim, and the trespass claim.[15] I dismissed with prejudice the claims for slander/defamation, fraud, unjust enrichment, § 1983 failure to train, and RICO violations.[16] The First Amendment-retaliation claim and the state civil-conspiracy claims were dismissed without prejudice and with leave to amend.[17] I strongly cautioned Gagnon that, to survive dismissal, his amended claims must be based on well-pled facts—not merely conclusions.[18]

---

[9] *Id.* at ¶ 66.

[10] *Id.* at ¶ 69.

[11] *Id.* at ¶ 72.

[12] Doc. 1.

[13] *Id.*

[14] Gagnon never served Metro with the complaint, so Metro was dismissed from the case. Doc. 33.

[15] Doc. 75-1 at 20:12–22.

[16] *Id.* at 37–41.

[17] *Id.* at 36–41.

[18] Doc. 75-1 at 36–38.

Page 3 of 15

### C. The amended allegations

Despite having leave to amend his complaint only to replead the First Amendment-retaliation claim and his state-law civil-conspiracy claim, Gagnon filed an amended complaint with these three claims: (1) First Amendment Retaliation, (2) 42 U.S.C. 1985 Civil Conspiracy to Violate Civil Rights; and (3) Fourteenth Amendment Due Process/NRS 289 Peace Officer Bill of Rights.[19] To his original First Amendment-retaliation claim, Gagnon added these factual allegations:

(1) In April 2011, Gagnon applied for a position at the police department in Ely, Nevada.[20] Perry told the hiring sheriff that Gagnon was a "back stabber" and should not be hired for the position.[21]

(2) In June 2013, Gagnon accepted a position with the Nevada Gaming Control Board (GCB).[22] In November 2013, the GCB conducted a routine background investigation on Gagnon.[23] During the investigation, the defendants told the investigator—or conspired with one another to leak the information—that there had been an internal investigation against Gagnon while he was with the department.[24]

Defendants again move for judgment on the pleadings.[25] They argue that, despite a second chance, Gagnon has still failed to plead a plausible First Amendment-retaliation claim and that he was never given leave to refile his abandoned federal conspiracy claim or leave to assert a new due-

---

[19] Doc. 45 at 16–18.

[20] *Id.* at ¶ 74.

[21] *Id.* at ¶ 75.

[22] *Id.* at ¶ 77.

[23] *Id.* at ¶ 84.

[24] *Id.* at ¶ 80.

[25] Doc. 75.

process/NRS Chapter 289 claim.[26] Gagnon opposed the motion[27] and—two months later (and three months after the deadline for amending pleadings expired)—Gagnon filed a motion for leave to file a second amended complaint.[28] The proposed second amended complaint contains the same claims as his first amended complaint but adds more facts purportedly to bolster his First Amendment-retaliation claim.[29]

## Discussion

### A. Legal standards

"Judgment on the pleadings is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law."[30] "Analysis under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, 'under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'"[31] When considering a Rule 12(c) motion, the court may dismiss an insufficiently pled claim instead of granting judgment on it.[32] In that case, the court has discretion to grant leave to amend unless it is clear that the deficiencies of the complaint cannot be cured by amendment.[33]

---

[26] *Id.*

[27] Doc. 85.

[28] Doc. 94.

[29] Doc. 94-1.

[30] *Rose v. Chase Bank, USA, N.A.*, 513 F.3d 1032, 1036 (9th Cir. 2008) (internal citation omitted).

[31] *Chavez*, 683 F.3d at 1108 (quoting *Brooks v. Dunlop Mfg. Inc.*, 2011 WL 6140912 *3 (N.D. Cal., Dec. 9, 2011).

[32] *Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1401 (N.D. Cal. 1997) aff'd, 237 F.3d 1026 (9th Cir. 2001) (internal quotes omitted) (if a complaint fails to state a plausible claim, "[c]ourts have discretion to grant leave to amend in conjunction with 12(c) motions, and may dismiss causes of action rather than grant judgment.").

[33] *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B.      Gagnon has not shown that he can state a plausible First Amendment-retaliation claim.**

Defendants move for judgment on the pleadings on plaintiff's first cause of action—a civil rights claim under 28 U.S.C. § 1983 for retaliating against him for exercising his First Amendment right to free speech. They contend that the facts that give rise to this claim all occurred more than two years before Gagnon filed this lawsuit, so this claim is time-barred under the two-year statute of limitations.[34] To the extent it can be deemed timely, defendants argue that Gagnon has not pled facts to support most of the elements needed to state a First Amendment-retaliation claim.

Gagnon filed this action on March 27, 2013, so any conduct before March 27, 2011, is not actionable.[35] The vast bulk of the acts that form the basis for this claim occurred between 2002 and 2009.[36] Gagnon alleges that Perry informed him that he had launched an internal investigation against him in "late March 2011" and that Gagnon retired from NHP on March 28, 2011, as a result of the investigation and other acts by defendants.[37] Despite my specific instructions that Gagnon replead this claim with specific facts and dates, Gagnon has failed to do so.

In an effort to cure this statute-of-limitations problem, Gagnon offers two new allegations of retaliation that occurred after March 27, 2011. He alleges that when he applied for a job with the White Pine Sheriff's Office in April 2011, Perry "sought out" the hiring sheriff and discouraged him from hiring Gagnon, accusing him of being a "back stabber" who "could not be trusted" and "should not be hired."[38] And he alleges that, during a background investigation performed by Gagnon's current employer the GCB, defendants, "in continued retaliation and conspiracy with Perry and

---

[34] Doc. 75 at 10–12.

[35] *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989) (holding that Nev. Rev. Stat. § 11.190(4)(e), "the residual statute of limitations for personal injury actions[,] is the statute of limitations applicable to section 1983 cases in Nevada.").

[36] *See* Doc. 45 at ¶¶ 19–61.

[37] *Id.* at ¶¶ 69, 72.

[38] *Id.* at ¶ 75.

Sanchez," disclosed Gagnon's internal-investigation file.[39] But even with these more contemporary retaliatory acts, Gagnon still fails to state a plausible First Amendment-retaliation claim because he has not alleged facts to show that he made a First Amendment-protected statement that attracted the retaliation.

### 1. Gagnon has not alleged facts to show he made a communication protected by the First Amendment.

The First Amendment shields a public employee from retaliation if he speaks as a private citizen on a matter of public concern.[40] Courts in this circuit employ a five-part test to determine whether a plaintiff has stated a claim for First Amendment-retaliation:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.[41]

In *Garcetti v. Ceballos*,[42] the Supreme Court narrowed the First Amendment protections for public employees. It held that public employees making statements within their "official duties" are "not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[43] The court reasoned that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer

---

[39] *Id.* at ¶¶ 78–90.

[40] *Anthoine v. N. Ctr. Counties Consortium*, 605 F.3d 740, 748 (9th Cir. 2010).

[41] *Eng. v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

[42] *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

[43] *Id.* at 421.

control over what the employer itself has commissioned or created."[44]  Applying these principles, the court found that a deputy district attorney could not maintain a First Amendment-retaliation claim based on concerns he reported to his supervisor about what he perceived as "serious misrepresentations" in a deputy sheriff's warrant affidavit.[45]  The employee "did not act as a citizen"; rather, he was "simply performing his . . . job duties."[46]

Applying *Garcetti*, the Ninth Circuit held in *Freitag v. Ayers*[47] that a correctional officer was performing her professional duties when she made "internal reports of inmate sexual misconduct and documentation of the prison's failure to respond," but she was acting as a private citizen when making the same complaints to a state senator and the state inspector general.[48]  In *Dahlia v. Rodriguez*, the Ninth Circuit performed the *Garcetti* fact-intensive inquiry to similarly conclude that a detective's report of fellow officers' misconduct in interview rooms to his direct supervisor was not protected speech.[49]  The court explained that, "generally, 'when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job,' although 'it is not dispositive that a public employee's statements are made internally.'"[50]  The subject matter of the communication is also "highly relevant to the ultimate determination whether the speech is protected by the First Amendment."[51]  Reports "about a particular incident or occurrence" are typically job-duty based and

---

[44] *Id.* at 421–22.

[45] *Id.* at 414, 422.

[46] *Id.* at 422–23.

[47] *Freitag v. Ayers*, 468 F.3d 528, 532, 536 (9th Cir. 2006).

[48] *Id.* at 545–46.

[49] *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

[50] *Id.* at 1074 (quoting *Davis v. McKinney*, 518 F.3d 304, 313 & n.3 (5th Cir. 2008)).

[51] *Id.* at 1074–75.

not protected.[52]

Not once in the ninety paragraphs of facts he offers does Gagnon identify a single statement he made that resulted in the alleged retaliation. Although he dramatically characterizes this case in his opening paragraph as one that "challenges the policy and practice of state officials to retaliate and punish a dedicated law enforcement employee for exercising the First Amendment Right to Free Speech in connection with matters of vital public concern . . . ,"[53] Gagnon's complaint is completely devoid of any allegation that he made a verbal or written communication or that he was retaliated against for that communication. The first claim for relief contains the conclusory allegations that Gagnon's "speech is of public importance because it addresses the NHP, a governmental agency whose activities impact upon the general public" and that Gagnon "properly utilized his guaranteed First Amendment Right reporting and discussing numerous areas of public and community concern," all about the K9 program. But as both *Ashcroft v. Iqbal*[54] and *Bell Atlantic Corp. v. Twombly*[55] teach, conclusory allegations like these—completely stripped of any of the factual details that I ordered Gagnon to provide if he wanted to state a plausible claim—are not entitled to a presumption of truth. This is precisely what I warned Gagnon about when dismissing this claim the first time with leave to amend.[56] Because Gagnon has not alleged a single protected communication to support his First Amendment-retaliation claim, the defendants are entitled to judgment on the pleadings.[57]

---

[52] *Id.* at 1075.

[53] Doc. 45 at ¶ 1.

[54] *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

[55] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2006).

[56] *See* Doc. 75-1 at 37 ("when you are repleading this [First Amendment claim], I want you to particularly look at that five-prong test and make sure that you plead the facts to support each one of those five prongs, not just those five prongs but the facts that support them. So not just allegations, not just conclusory statements of those elements because that won't survive *Iqbal* and *Twombly*.").

[57] U.S. District Judge Larry Hicks dismissed the First Amendment-retaliation claim filed by other NHP officers challenging Perry's treatment of them and the K9 program for this same deficiency. *Moonin v. Nevada ex rel. Dep't of Pub. Safety*, 960 F. Supp.2d 1130, 1142 (D. Nev. 2013) ("coming on the heels of almost eighty pages of factual recitation, plaintiffs' retaliation claim fails to identify

**2. Gagnon has not demonstrated that he could plead a First Amendment-protected communication even if he were given a second chance to amend.**

The question that remains is whether Gagnon should be given leave—yet again—to plead the facts of these alleged communications.[58] Gagnon first fleshes out those facts in his opposition to the motion for judgment on the pleadings. He explains that in 2008 he went to his supervisor Hafen "to advise him that" Perry and Sanchez "were interfering in his efforts to develop the [department's] K9 Program."[59] "After Hafen initiated corrective action against Perry and Sanchez, Captain Gagnon would be subject to retaliatory acts . . . in an attempt to discredit him and disrupt the [K9] program."[60] Gagnon further argues that in November 2010 he "approached Hafen and reiterated his concern regarding Colonel Perry taking retaliatory action against him because of his involvement in the K9 Program."[61]

Gagnon reframes these allegations in his proposed second amended complaint, stressing that he went to Hafen to report the defendants' interference with Gagnon and Hafen's pet project:[62]

> Because Director Hafen did not have confidence in Colonel Perry's ability to either develop or adequately train a formidable K9 Program,

---

the 'form and context' of the speech at issue, rendering it impossible to discern which speech gave rise to which acts of retaliation.") (internal citations omitted).

Because I am dismissing this claim with prejudice based on the failure of this element, I do not reach defendants' remaining challenges to this claim.

[58] *Carmen v. San Francisco Unified Sch. Dist.,* 982 F. Supp. 1396, 1401 (N.D. Cal. 1997) aff'd, 237 F.3d 1026 (9th Cir. 2001).

[59] Doc. 85 at 8.

[60] *Id.* at 9.

[61] *Id.* at 11. Plaintiff has also not established that the topic of Perry's interference in Gagnon's efforts to run the K9 program is a matter of public concern and not merely an "internal power struggle[] within the workplace." *Desrochers v. City of San Bernardino,* 572 F.3d 703, 710 (9th Cir. 2009) (quoting *Tucker v. Cal. Dep't of Educ.,* 97 F.3d 1204, 1210 (9th Cir. 1996) (internal quotation marks omitted)). This is a second unsatisfied element that prevents Gagnon from stating a claim and weighs against further leave to amend.

[62] Doc. 94-1 at ¶¶ 42–44.

> Hafen advised Perry that Hafen would be moving the implementation of the Program to the Investigation Division under the direction of Plaintiff, Captain Gagnon. . . . Perry stated he had no objection although he appeared to be angered by the suggestion.[63]
>
> . . .
>
> Hafen believed Gagnon was the most qualified . . . [and] assigned him to update and revise his plan using a best practices approach and to report and brief Hafen directly as the Program progressed.[64]
>
> . . .
>
> The reassignment angered and embarrassed, Perry openly informed his subordinates that he now hated Gagnon and Director Hafen. Perry vowed to destroy the K9 Program as well as any new programs implemented by Director Hafen. Perry stated in a command staff meeting, "I am going to unf++k everything Hafen f++ks up."
>
> Hafen maintained an open door policy for employees of the department. On numerous occasions between July 2008 and December 2008, Captain Gagnon came to Hafen to advise him that Colonel Perry and Major Sanchez were interfering in his efforts to develop the DPS K9 Program.[65]
>
> . . .
>
> After taking corrective action against Perry and Sanchez, Hafen would be advised by Captain Gagnon that retaliatory acts were continually being taken against him in an attempt to discredit him and disrupt the Program.[66]

Gagnon still fails to state a plausible claim because the communications he alleges are all squarely job related and, thus, do not enjoy the same First Amendment protection as private-citizen speech. Gagnon describes his job responsibility broadly as the "implementation" of the K9 program. He alleges that Director Hafen hand-picked him for the job and "maintained an open door policy" to discuss the K9 program. And Gagnon took advantage of that open-door policy to report that Perry and Sanchez were interfering "in his efforts to develop the DPS K9 Program." Gagnon alleges that the retaliation against him began once Perry and Sanchez learned of that report. And he takes

---

[63] *Id.* at ¶ 26.

[64] *Id.* at ¶ 29.

[65] Gagnon includes allegations that Hafen perceived these reports to be Gagnon's "good faith communication in direct connection with a public concern, and a reasonable and necessary exercise of Free Speech." Doc. 94-1 at ¶ 43. But Hafen's subjective characterization of Gagnon's communications is belied by their context and the further allegation that Hafen took corrective action against Perry and Sanchez as a result of the report, which makes it apparent that the relevance and impact of Gagnon's report was internal, not public.

[66] Doc. 94-1 at ¶¶29–30, 43–44.

umbrage with the department act of "repeatedly ignoring the blatant and hostile retaliatory actions directed at" him and its "refusal to take any disciplinary action against any of the officers retaliating against" him.[67]

Even construing the facts and drawing all inferences in the proposed second amended complaint in Gagnon's favor, the only reasonable conclusion is that Gagnon—just like the correctional officer in *Freitag*, the district attorney in *Garcetti*, and the police officer in *Dahlia*—acted pursuant to his job duties when he reported Perry and Sanchez's interference with the K9 program up the chain of command to Hafen. This speech is not protected and cannot form the basis for a plausible claim of First Amendment retaliation. Permitting Gagnon to amend his complaint—again—to include these still insufficient allegations would be futile.[68] Gagnon's request to amend his First Amendment-retaliation claim is denied.

### C. Gagnon previously abandoned his claim for civil conspiracy under 42 USC § 1985, he lacked leave to add it back in, and this claim fails as a matter of law.

In his original complaint, plaintiff alleged two civil-conspiracy claims: one under state law (the fourth claim for relief) and one under federal law (the fifth claim for relief).[69] When defendants first moved for judgment on the pleadings back in 2013, they argued that plaintiff's state civil-conspiracy claim was adequately pled and that the federal claim failed because the statute plaintiffs relied on—42 U.S.C. § 1985(1)—protects only federal officers, not a state law-enforcement officer

---

[67] *Id.* at ¶ 128.

[68] The proposed amended claim would be futile for the additional reason that Gagnon has expressly pled that Perry's actions against him were motivated by his hatred of Gagnon and Director Hafen and that, because Hafen had reassigned the K9 program from Perry to Gagnon, "Perry vowed to destroy the K9 Program as well as any new programs implemented by Director Hafen." Doc. 94-1 at ¶ 30 (proposed second amended complaint). In his motion for leave to amend, Gagnon summarizes, "Although it is difficult to understand the motivation behind Perry's vengeful acts, one clear fact is that Perry targeted every program and individual that shared the vision for the Department K9 Program and anyone loyal to Hafen as the Director." Doc. 94 at 28. This theory belies the conclusory allegations in Gagnon's first claim for relief that Perry's retaliation was brought on by something Gagnon said.

[69] Doc. 1 at 25–26.

like Gagnon was.[70] In his response brief (in boldface type), Gagnon "concede[d] that a Federal Conspiracy Claim Applies Only to Federal Officers."[71] Plaintiff's counsel confirmed at the hearing that this claim was being abandoned:

> The Court: . . . so, in your opposition, you've essentially conceded the dismissal of . . . claim five . . . . [and others]. So those four Claims you're conceding should be dismissed; right?
>
> Plaintiff's counsel: Yes.[72]

I dismissed the federal conspiracy claim as abandoned and meritless; I also dismissed the state civil-conspiracy claim with leave to amend.[73]

But instead of repleading his state civil-conspiracy claim in his amended complaint, Gagnon reanimated his federal one.[74] When defendants pointed out that Gagnon did not have leave to replead this claim, he referenced the court's minutes from the last dismissal hearing (erroneously calling those minutes of the proceedings an "order") and argues, "The Order of this district court (#35) clearly preserved Plaintiff's claim for conspiracy, which was plead as the second cause of action in the Amended Complaint (#44). Consequently, it cannot be considered as abandoned. 42 U.S.C. § 1985."[75]

Gagnon is flat wrong. He expressly abandoned his 42 USC § 1985 federal civil-conspiracy

---

[70] Doc. 9 at 32–33.

[71] Doc. 16 at 13.

[72] Doc. 75-1 at 20:12–22.

[73] *Id.* at 37–38.

[74] Doc. 45 at 17–18.

[75] Doc. 85 at 18. Gagnon cuts and pastes this same argument into his motion to file a second amended complaint, *see* doc. 94 at 33, even though it does not appear he has proposed an amended version of that claim or otherwise asked for leave to restate this zombie claim. *Compare* Doc. 45 at 17 *with* 94-1 at 27.

claim and lacked leave to restate it in his amended complaint.[76] Accordingly, this claim is dismissed—yet again—this time because (1) the protections of 42 USC §1985(1) extend exclusively to federal officers, and Gagnon has conceded this point; and (2) it was filed without leave of court.[77] Gagnon's second claim for relief is dismissed with prejudice and without leave to amend because it fails as a matter of law and, thus, leave to amend would be futile.

**D.  Gagnon's due-process/NRS Chapter 289 claim is not properly before the court.**

Gagnon's third claim for relief ("Fourteenth Amendment Due Process/NRS 289 Peace Officer Bill of Rights")[78] must suffer the same fate. Defendants argue this claim should be dismissed because Gagnon did not make a due-process or NRS Chapter 289 claim in his original complaint and the court did not grant Gagnon leave to add these theories.[79] Gagnon baldly responds that his due-process claim is proper because it "is a natural extension of the earlier acts alleged."[80]

Gagnon's cavalier approach to amendment is not well taken. Remarkably, in response to having defendants point out to him that he lacked leave to file this claim, he asks for neither permission nor forgiveness; he just maintains his natural entitlement to bring this claim. His 34-page motion for leave to amend—filed more than three months after the deadline for amendment passed—never even asks for leave to state these claims, let alone demonstrates excusable neglect for not asking for leave before the amendment deadline expired.[81]

A district court may, in its discretion, order stricken from any pleading "any redundant, immaterial, impertinent, or scandalous matter."[82] A district court may also strike portions of a

---

[76] Docs. 16, 75-1.

[77] *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717 (9th Cir. 1981).

[78] Doc. 45 at 18.

[79] Doc. 75 at 19–20.

[80] Docs. 85 at 19, 94 at 34.

[81] Doc. 94. Gagnon also does not ask for permission to exceed the 30-page limit for motions. *See* Local Rule 7-4.

[82] Fed. R. Civ. P. 12(f).

pleading that exceed limitations set by the court.[83] I granted Gagnon leave to amend for the limited purposes set out in the record: to add additional facts and dates to support his claim for First Amendment retaliation and state-law civil conspiracy. Because Gagnon snuck this due-process/NRS Chapter 289 claim in without leave of court, I strike it. And because he has not demonstrated good cause to let him add it at this late date[84] or excusable neglect to save him from the January 26, 2015, amendment cutoff,[85] this third claim for relief is dismissed without leave to amend.

This order leaves plaintiffs with no claims pending and no right to amend. This case will be closed.

## Conclusion

Accordingly, with good cause appearing and no reason for delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for judgment on the pleadings **(Doc. 75) is GRANTED.** Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is entered in favor of the defendants on plaintiff's first claim for relief; plaintiff's second claim for relief is dismissed with prejudice; and his third claim for relief is stricken.

IT IS FURTHER ORDERED that plaintiff's motion for leave to amend **(Doc. 94 ) is DENIED.**

**The Clerk of Court is directed to enter judgment accordingly and close this case.**

Dated this 24th day of August, 2015

_____
Jennifer A. Dorsey
United States District Judge

---

[83] See *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 559–60 (9th Cir. 2009) (affirming a district court's decision to strike an intervenor's answer when the answer "exceeded the bounds" of the limited intervention granted).

[84] *Acri v. Int'l Ass'n of Machinists and Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.").

[85] See *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992).